IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIO SHORT, | ) |
|         Plaintiff, | ) |
|     v. | ) Case No. |
| DERBYWIRE, INC., SELFIEPAY, INC., AND SHARON BATTLE, | ) |
|         Defendants. | ) |

**PLAINTIFF MARIO SHORT'S COMPLAINT AGAINST
DERBYWIRE, INC., SELFIEPAY, INC., AND SHARON BATTLE**

Plaintiff Mario Short, by his attorneys Heather L. Maly and Thomas A. Walsh of Ice Miller LLP, complains of Defendants Derbywire, Inc., Selfiepay, Inc., and Sharon Battle, as follows:

**THE PARTIES**

1. Plaintiff Mario Short is an individual currently residing in Chicago, Illinois. He is a citizen of the state of Illinois.

2. Defendant Derbywire, Inc. ("Derbywire") is a Delaware corporation having its principle place of business at 1155 Mt. Vernon Highway, Atlanta, Georgia. Derbywire is a citizen of Delaware and Georgia.

3. Defendant Selfiepay, Inc. ("Selfiepay") is Delaware Corporation. Selfiepay is a citizen of Delaware.

4. Defendant Sharon Battle ("Ms. Battle") is a Georgia resident. Ms. Battle is a citizen of Georgia.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because (1) Mr. Short is a citizen of the state of Illinois, (2) Derbywire is a citizen of the states of

Delaware and Georgia, (3) Selfiepay is a citizen of the state of Delaware, (4) Ms. Battle is a citizen of the state of Georgia, and (4) the amount in controversy as set forth in this Complaint exceeds $75,000.

6. Derbywire, Selfiepay, and Ms. Battle are subject to the Court's personal jurisdiction because Derbywire, Selfiepay, and Ms. Battle actively solicited Mr. Short's investment within the State of Illinois, conducted business within the State of Illinois, and sold promissory notes with the knowledge and expectation that they will be purchased by consumers in Illinois.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because Derbywire, Selfiepay, and Ms. Battle are subject to personal jurisdiction in the Northern District of Illinois, and because a substantial part of the events or omissions giving rise to the claim occurred and the injury was suffered in the Northern District of Illinois.

## BACKGROUND

8. Mario Short is a respected and successful Chicago businessman who is the President and CEO of SYTE Corporation, a national construction corporation serving the public and private sectors. Mr. Short also served the United States honorably in the United States Marines Corp.

9. Due to his success, Mr. Short supports and mentors others in the business community, particularly other entrepreneurs looking to start or grow a business but without the resources or experience to capitalize on their ideas.

10. Ms. Battle was one such entrepreneur. She was introduced to Mr. Short in March 2015, by Mr. Short's colleague who also was an alumna from Ms. Battle's alma mater, Tuskegee University.

**Mr. Short Was Induced to Invest in the Defendants**

11. Ms. Battle, as the founder, president and CEO of Derbywire and Selfiepay, approached Mr. Short seeking a potential investor in Derbywire and Selfiepay, and a business mentor. Mr. Short had the financial resources, experiences, and connections that Ms. Battle needed to build her profile, her experience, and her company.

12. Ms. Battle, as the founder, president, and CEO of Derbywire and Selfiepay, regularly contacted Mr. Short via phone and email in his Chicago office and Chicago residence in order to induce him to mentor her and to invest in her company. Based on her role, Ms. Battle was acting on behalf of Derbywire, Selfiepay, and herself in her communications with Mr. Short.

13. In order to secure Mr. Short's help, Ms. Battle described herself as a business visionary with the engineering background, design experience, and the business acumen to thrive and succeed in the technology industry.

14. Ms. Battle also promoted her business ventures. She focused her pitch to Mr. Short on Selfiepay. Selfiepay is a mobile wallet service provider designed to use facial recognition technology for credit card payment verification. With Selfiepay, a user may store credit card information in a smartphone wallet application. Then, before a purchase is made, the user may take a self-portrait, or a "selfie," with the user's smartphone. The Selfiepay app on the smartphone would then use facial recognition technology to verify that the cardholder and purchaser are the same person. This additional and personalized verification is intended to prevent credit card fraud.

15. To induce his investment, in March 2015 Ms. Battle provided Mr. Short with information regarding a patent application for the Selfiepay technology, a confidential evaluation of Selfiepay prepared by Thomson Reuters including Brokers notes, and a Selfiepay company

overview. In addition, she spoke with Mr. Short on multiple occasions touting the Selfiepay technology, its uniqueness and functionality in the market, and its likelihood of success.

16. Ms. Battle also mentioned Derbywire in her pitch to Mr. Short. Unbeknownst to Mr. Short at the time, Derbywire and Selfiepay are distinct corporate entities. Unlike Selfiepay, Derbywire does not have a single product focus. Instead, it seems to be a parent company for many of Ms. Battle's endeavors. For example, Derbywire includes a music streaming website, a headphones brand, and a digital music label.

17. At all times while she was soliciting Mr. Short's investment, Ms. Battle represented to Mr. Short that Derbywire included Selfiepay, such that investing in Derbywire meant investing in Selfiepay. For example, in a March 2015 email to Mr. Short, Ms. Battle represented that Selfiepay was an assumed business name for Derbywire (a "DBA" in Ms. Battle's words). A resume that Ms. Battle sent Mr. Short prior to his investment identified Selfiepay as a business line under or a subsidiary entity of Derbywire, further confirming the relationship between the brands. Ms. Battle's entire investment pitch to Mr. Short was based on Selfiepay and its technology, including that it was a business line under or a subsidiary entity of the parent corporation, Derbywire.

18. As a result of Ms. Battle's representations, Mr. Short agreed to invest money in Derbywire/Selfiepay and also to invest his time and expertise in Derbywire/Selfiepay and Ms. Battle. He did so believing that he was investing in Selfiepay and the Selfiepay technology. Mr. Short was interested only in Selfiepay, as it was a unique product that he believed had tremendous commercial potential based on Ms. Battle's representations.

19. In contrast, Derbywire without Selfiepay was a technology company seeking to compete in already mature markets, such that it would be difficult to distinguish that company and build its brands.

**Mr. Short's First Investment**

20. Mr. Short and Ms. Battle negotiated the terms of the investment, the promissory notes, and the form of payment via phone while Mr. Short was in Chicago.

21. In March 2015, Mr. Short agreed to invest $50,000 in Derbywire/Selfiepay. He entered into a Convertible Promissory Note with Derbywire in the amount of $50,000 on March 18, 2015 ("March Promissory Note"). The note is due and payable on March 18, 2016. The March Promissory Note also allowed the parties to convert the amount due to shares in the company at the expiration of the term. (A copy of the March Promissory Note is attached hereto as Exhibit A).

22. The March Promissory Note is an unregistered security by its own admission and under federal and Illinois blue sky laws.

23. As part of the March Promissory Note, Mr. Short paid $16,872.68 to Snimokaji IP for legal work relating to the patent application for the Selfiepay technology and an application to register the Selfiepay trademark. The March 2015 invoice from Snimokaji IP sought payment for the "Patent for Social Networking/Mobile/Payment," the "Full Patent for the Derbygram (Selfiepay) Mobile Payment App using Facial Recognition Technology," and the "Trademark for Selfiepay which is a mobile payment wallet that allows users to take a selfie using facial recognition technology for the payment verification." Clearly Mr. Short's investment was being used to fund Selfiepay and its technology.

24. Mr. Short disbursed the remainder of the $50,000 investment via wire transfer on or about March 19, 2015.

25. Mr. Short's initial $50,000 investment was not enough. Less than one month after the funds from the March Promissory Note were disbursed, Derbywire/Selfiepay needed more money to continue to operate. Among other things, Derbywire/Selfiepay needed funds to pay

5

legal bills for intellectual property and corporate work, network hosting fees for digital content, and Selfiepay retailer testing necessary to launch the product. Consequently, Mr. Short was asked to increase his investment in Derbywire/Selfiepay.

**Mr. Short's Second Investment**

26. Before providing additional funds, Mr. Short requested additional assurances that his investment was providing capital for Selfiepay, as Ms. Battle had repeatedly represented. In order to appease his concerns, Ms. Battle provided Mr. Short with a written Addendum for Convertible Promissory Note ("Addendum") on or about April 2, 2015 confirming that he was investing in Selfiepay. (A copy of the Addendum is attached hereto as Exhibit B). The Addendum said:

> As part of the convertible notes exercised by Mario Short in the amount of $50K on March 16, 2015 and $70K on March 29, 2015. This addendum is to acknowledge that his investment is apart of the entire derbywire inc. infrastructure that consist of the following:
>
> Derbywire Inc. comprise of Derbywire Holdings that consist … "selfiepay", a mobile payment app using facial recognition software technology ... All these brands represent the company and is apart of the makeup of the company. …
>
> This is intended to provide clarity that this investment covers across all brands listed.

27. On or about April 20, 2015, as a result of the Addendum, Mr. Short agreed to increase his investment in Derbywire/Selfiepay and entered into a second Convertible Promissory Note in the amount of $70,000 ("April Promissory Note"). The note is due and payable on April 3, 2016. The April Promissory Note also allowed the parties to convert the amount due to shares in the company at the expiration of the term. (A copy of the April Promissory Note is attached hereto as Exhibit C).

28. The April Promissory Note is an unregistered security by its own admission and under federal and Illinois blue sky laws.

29. Mr. Short disbursed $62,000 of the $70,000 via wire transfers on April 18, 2015, May 13, 2015, and May 26, 2015.

**Mr. Short's Additional Support**

30. Throughout his involvement, Mr. Short also provided additional monetary and non-monetary support to Ms. Battle and Derbywire/Selfiepay. For example, Mr. Short introduced and paid for Ms. Battle to attend an executive education program at the Tuck School of Business at Dartmouth College. This program provided numerous networking opportunities with potential investors, mentors, and partners. Ms. Battle was able to workshop Derbywire/Selfiepay to identify ways to grow, promote, and otherwise make the brands successful. She also claimed to learn how to structure and the business to get it started and running soundly, which is necessary to entice investors.

31. Mr. Short also offered his own business expertise to Derbywire/Selfiepay. Based on his expertise, Mr. Short was concerned that the management of the multiple business lines within Derbywire/Selfiepay was focused too much on discussions of future potential without any energy being invested in the present state of the company, which is equally important to attract investors. Mr. Short made recommendations to strengthen the company and management, including adding a proven business leader to deal with the finances while the founder Ms. Battle focuses on product development.

32. Mr. Short also lent Ms. Battle money (over and above the amounts documented by the March Promissory Note and the April Promissory Note) in May/June 2015 so that Ms. Battle could pay funeral and burial expenses for her father who had passed away. Like Mr. Short, Ms. Battle's father was a veteran of the United States Armed Forces. Mr. Short also traveled to Georgia to attend the funeral of Ms. Battle's father.

**The Defendants' Misrepresentations Are Revealed**

33. After Derbywire received Mr. Short's funds from the April Promissory Note, he was ignored and marginalized. Ms. Battle stopped returning Mr. Short's calls and responding to his emails after he complained to Ms. Battle about the lack of transparency with respect to Derbywire/Selfiepay or her proposed changes to note financing terms, such as the ones he entered into. Ms. Battle isolated him from Derbywire/Selfiepay and prevented him from protecting his investment.

34. Mr. Short was forced to call Ms. Battle anonymously via Skype so that she would answer his call and speak with him about the state of Derbywire/Selfiepay and strategy going forward. Ms. Battle has otherwise refused to update Mr. Short on the state of Derbywire/Selfiepay after she received his money.

35. Ms. Battle also has completely reversed her position on Derbywire and Selfiepay. While in multiple conversations and written correspondence prior to Mr. Short's investment she represented that Selfiepay was a subsidiary of, or a line of business under, Derbywire and that an investment in Derbywire was an investment in Selfiepay, Ms. Battle more recently has told Mr. Short that Derbywire and Selfiepay are and always were separate companies, in direct contravention of her earlier and repeated representations. Despite Ms. Battle's repeated statements to the contrary, both orally and in writing, as she was soliciting an investment from Mr. Short, Battle now maintains that Mr. Short invested only in Derbywire and that he has never invested in Selfiepay.

36. Mr. Short never would have invested in the Derbywire but for the commercial opportunity presented by the Selfiepay technology. He invested in Derbywire in reliance on Ms. Battle's representations that he was investing in the commercial opportunity presented by the Selfiepay technology.

8

37. On June 19, 2015, after the funds for the April Promissory Note were disbursed by Mr. Short, Ms. Battle also registered the corporate entity, Selfiepay Holdings, Inc., presumably to further separate the Selfiepay technology from Derbywire/Selfiepay with the intent to further isolate Mr. Short from the value of his investment.

38. Upon information and belief, Ms. Battle is negotiating with MasterCard to sell or license the Selfiepay technology and/or to sell Selfiepay, Inc. and/or Selfiepay Holdings, Inc. In order to keep the proceeds from such transactions for herself, Ms. Battle is clearly trying to prevent Mr. Short from having any stake in Selfiepay and the Selfiepay technology and thus from realizing a return on his investment.

39. To entice his investment, Mr. Short also was promised a position on the Board of Directors for Derbywire/Selfiepay. While Ms. Battle prepared the documents for him to formally join the Board of Directors, Ms. Battle never brought forward Mr. Short for election to Board of Directors.

40. Mr. Short also would not have invested in Derbywire/Selfiepay if he had known that he would be prevented from joining the Board of Directors and that his advice and experience would be wholly ignored.

41. As is clear, Ms. Battle and Derbywire knowingly misrepresented the relationship between Selfiepay and Derbywire to their own advantage and to induce Mr. Short to enter into the March Promissory Note and the April Promissory Note.

42. Ms. Battle is now attempting to prevent Mr. Short from realizing the value of his investment. She has denied that Mr. Short invested in Selfiepay or the Selfiepay technology, instead incorrectly insisting that he invested only in Derbywire. Under the circumstances, he is unlikely to be paid back the value of the two promissory notes.

9

## COUNT ONE
### (Fraud in the Inducement)

43. Mr. Short incorporates paragraphs 1 through 42 above by reference as if fully repeated herein.

44. As discussed above, Defendants falsely represented on numerous occasions that Selfiepay and the Selfiepay technology were a part of Derbywire and that the March Promissory Note and the April Promissory Note that Mr. Short signed were to provide capital to advance Selfiepay and the Selfiepay technology.

45. Defendants knew or believed this information to be false when they made it. As founder and CEO, Ms. Battle was aware at all times relevant to this case that Derbywire and Selfiepay were distinct corporate entities. Ms. Battle also controlled the two companies, as well as decisions regarding the allocation of the proceeds from the March Promissory Note and the April Promissory Note between Derbywire and Selfiepay.

46. That Mr. Short was investing in Selfiepay and the Selfiepay technology was always the most material part of Mr. Short's decision to enter into the March Promissory Note and the April Promissory Note, and both Derbywire and Ms. Battle knew this to be true, particularly since Mr. Short asked for such further assurances in writing before agreeing to the April Promissory Note.

47. Both Derbywire and Ms. Battle knew at all times that Mr. Short was not investing in Selfiepay, Inc.

48. Defendants made the representations that Selfiepay was part of Derbywire and that the proceeds from the March Promissory Note and the April Promissory Note were to provide capital to advance Selfiepay and the Selfiepay technology, with the intention that Mr. Short rely on such representations.

49. Mr. Short reasonably relied on these representations, as Ms. Battle made both written and oral assurances that Selfiepay was part of Derbywire, Mr. Short was provided written materials exclusively touting Selfiepay, and Mr. Short was asked to pay the legal bills for the filing of the patent and trademark applications for Selfiepay and the Selfiepay technology.

50. Mr. Short did in fact rely on these representations and entered into the March Promissory Note and the April Promissory Note in the aggregate amount of $120,000 as a result.

51. Mr. Short has been damaged by these representations in that he invested $120,000 that he would not have invested had he known the truth about Derbywire/Selfiepay and Ms. Battle.

**WHEREFORE,** Plaintiff prays for judgment in his favor in the amount of $120,000 plus interest, attorneys' fees, and whatever additional relief that the Court finds just and appropriate.

## COUNT TWO
### (Violation of Illinois Securities Law of 1953- Fraud)

52. Mr. Short incorporates paragraphs 1 through 51 above by reference as if fully repeated herein.

53. At all times relevant to this case there was in effect the Illinois Securities Law of 1953 (815 ILCS 5/1 *et seq.*) (hereinafter the "Securities Law").

54. Defendants' sale of the March Promissory Note and the April Promissory Note constituted the sale of "securities" within the meaning of the Illinois Securities Law. (815 ILCS 5/13(A)).

55. By engaging in the activities described above and by making the aforesaid misrepresentations to Mr. Short, the Defendants Ms. Battle and Derbywire engaged in a transaction, practice or course of business in connection with the sale of securities which works or tends to work a fraud or deceit upon Mr. Short in violation of 815 ILCS 5/12(f).

56. By engaging in the activities described above and by making the aforesaid misrepresentations to Mr. Short, the Defendants Ms. Battle and Derbywire obtained money through the sale of securities by means of any untrue statement of material fact or any omission of material in violation of 815 ILCS 5/12(g).

57. By engaging in the activities described above and by making the aforesaid misrepresentations to Mr. Short, the Defendants Ms. Battle and Derbywire did employ any device, scheme or artifice to defraud with the same or purchase of the March Promissory Note and the April Promissory Note in violation of 815 ILCS 5/12(i).

58. These representations and omissions were made with the intent that Mr. Short rely thereon in determining whether to enter into the March Promissory Note and the April Promissory Note.

59. Mr. Short did in fact reasonably rely upon the honesty and truthfulness of the foregoing statements and omissions in deciding to enter into the March Promissory Note and the April Promissory Note.

60. The foregoing representations and omissions were materially false and misleading.

61. Pursuant to Section 13 of the Securities Law, Mr. Short is entitled to rescind his purchase of the March Promissory Note and the April Promissory Note, and he is entitled to relief as provided thereunder. (815 ILCS 5/13(A)).

62. Under Illinois Securities Law, Mr. Short is entitled to recover the "full amount paid together with interest from the date of payment…" plus "costs together with reasonable fees and expenses of the purchaser's attorney against the defendant." (815 ILCS 5/13(A)).

63. Pursuant to this Complaint, Mr. Short is demanding that Defendants rescind the March Promissory Note and the April Promissory Note. Mr. Short only determined that he was entitled to rescission in October 2015, less than six months ago. 815 ILCS 5/13.

**WHEREFORE,** Plaintiff prays for rescission of the March Promissory Note and the April Promissory Note and judgment in his favor in the amount of $120,000 plus interest, attorneys' fees, and whatever additional relief that the Court finds just and appropriate.

### COUNT THREE
**(Violation of Illinois Securities Law of 1953- Failure to Register Securities )**

64. Mr. Short incorporates paragraphs 1 through 63 above by reference as if fully repeated herein.

65. At all times relevant to this case there was in effect the Illinois Securities Law (815 ILCS 5/1 *et seq.*).

66. Defendants' sale of the March Promissory Note and the April Promissory Note constituted the sale of "securities" within the meaning of the Illinois Securities Law. (815 ILCS 5/13(A)).

67. All securities are required to be registered with both the federal government and the state prior to their offer or sale in Illinois, absent an exemption. 815 ILCS 5/5.

68. The March Promissory Note and the April Promissory Note each contains a disclaimer that it is not a registered security.

69. As such, the offeror must qualify for and then register an exemption under both state and federal law.

70. On December 2012, Derbywire filed a Form D Notice of Exempt Offering of Securities claiming an exemption under Rule 506 of Regulation D of the federal Securities Act of 1933.

71. Derbywire has not subsequently filed any amendment to its Form D. By failing to file an amendment annually, Derbywire's Form D is no longer valid. Due to its failure to file an annual amendment, Derbywire has not complied with its federal filing requirements in violation of Illinois Securities Law. (815 ILCS 5/2a).

72. Upon information and belief, Derbywire never filed the Form D for its claimed Rule 506 exemption in Illinois in violation of Illinois Securities Law. (815 ILCS 5/2a).

73. As such, the sales of the March Promissory Note and the April Promissory Note were sales in violation of the Illinois Securities Law.

74. The sale of securities made in violation of the Illinois Securities Law is voidable at the election of the purchaser. (815 ILCS 5/13(A)). As such, Mr. Short is entitled to recover the "full amount paid together with interest from the date of payment…" plus "costs together with reasonable fees and expenses of the purchaser's attorney against the defendant." (815 ILCS 5/13(A)).

75. Pursuant to this Complaint, Mr. Short is demanding that Defendants rescind the March Promissory Note and the April Promissory Note. Mr. Short only determined that he was entitled to rescission in October 2015, less than six months ago. 815 ILCS 5/13.

**WHEREFORE**, Plaintiff prays for rescission of the March Promissory Note and the April Promissory Note and judgment in his favor in the amount of $120,000 plus interest, attorneys' fees, and whatever additional relief that the Court finds just and appropriate.

### COUNT FOUR
**(Declaratory Judgment)**

76. Mr. Short incorporates paragraphs 1 through 75 above by reference as if fully repeated herein.

77. In the alternative, Mr. Short seeks a declaration that he invested in Selfiepay and its technologies based on the representations made by Ms. Battle and Derbywire, including the representation made in the Addendum.

78. At all times prior to Mr. Short's investment into Derbywire/Selfiepay via the March Promissory Note and the April Promissory Note, Derbywire and Ms. Battle represented that Mr. Short's investment was also in Selfiepay.

79. Based on these representations, Mr. Short believed he invested in Selfiepay. The Defendants, however, dispute that Mr. Short invested in Selfiepay and instead have stated that Mr. Short only invested in Derbywire, not Selfiepay. As such, an actual controversy between the parties exists.

**WHEREFORE,** Plaintiff prays for a declaration that he is an investor in Selfiepay via the March Promissory Note and the April Promissory Note and whatever additional relief that the Court finds just and appropriate.

Respectfully submitted,

**MARIO SHORT**

By:    /s/ Heather L. Maly
        One of His Attorneys

Heather L. Maly
**ICE MILLER LLP**
200 West Madison, Suite 3500
Chicago, Illinois 60606
(312) 726-1567
heather.maly@icemiller.com

Thomas A. Walsh (to be admitted *pro hac vice*)
**ICE MILLER LLP**
One American Square Suite 2900
Indianapolis, Indiana 46282
(317) 236-2100
*thomas.walsh@icemiller.com*

C\423514.3