UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIO SHORT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:15-cv-11203 |
| v. ) | |
| ) | Judge Sharon J. Coleman |
| DERBYWIRE, INC., SELFIEPAY, INC. ) | |
| AND SHARON BATTLE, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

On December 15, 2015, plaintiff Mario Short ("Short") filed the instant complaint (the "Complaint") against defendants Derbywire, Inc. ("Derbywire"), Selfiepay, Inc. ("Selfiepay") and Sharron Battle ("Ms. Battle," and together with Derbywire and Selfiepay, "Defendants").[1] Defendants respectfully submit the foregoing memorandum of law in support of their motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### I. Introduction

Plaintiff Mario Short executed two promissory notes with defendant Derbywire, Inc. Pursuant to the terms of each note, Short is due to be paid back in March and April of 2016, respectively. Neither note provides Derbywire the option to unilaterally pre-pay the amounts due. Instead of waiting for those notes to mature, however, and instead of requesting that the notes be re-paid early, Short has brought the instant lawsuit, claiming that he did not simply execute notes with Derbywire, but rather invested directly in a separate entity affiliated with Derbywire –

---

[1] While named defendant Sharron Battle has not yet been served in this matter, she hereby appears and waives the defense of insufficient service of process, reserving all other defenses and claims available to her.

Selfiepay, Inc. Oddly, the primary relief Short requests from this Court is the return of the monies he paid in connection with the notes – an event scheduled to occur anyway within the next two months.

In addition, Short has alleged that he only executed the notes as a result of certain technology that he believed he was investing in, but attaches in support thereof both notes – neither of which make any reference to that technology. Instead, he seeks to have this Court reform the agreements to provide terms which he did not negotiate for, and does so under the guise that Derbywire committed fraud by failing to retain certain technology – but Short fails to allege any basis for a finding that Derbywire was ever *required* to retain that technology. In essence, Short is asking this Court to remedy Short's failure to properly negotiate the notes and to grant Short rights which he did not bargain for and which the notes do not allow. Indeed, Short wants the Court to recognize him as a "respected and successful" businessman, but at the same time believe that he was unable to understand the terms of the notes he executed. The Court should not indulge that request.

## II.     Allegations in the Complaint

Mario Short describes himself as a "respected and successful Chicago businessman."[2] Comp. at ¶ 8. In March 2015 he was introduced by a colleague to Ms. Battle, who at the time was the president and CEO of Derbywire. *Id.* at ¶ 11. He alleges Ms. Battle was also the president and CEO of defendant Selfiepay.[3] *Id.* at ¶ 12. According to the Complaint, Selfiepay

---

[2] Defendants deny the allegations and accusations made by Short in the Complaint – however, for purposes of this motion to dismiss, the Court is to take the allegations in the Complaint as true. *See Allen Bros., Inc. v. Abacus Direct Corp.*, 2002 WL 237872 at *2 (N.D. Ill. Feb. 19, 2002). Accordingly, Defendants present only those facts as alleged in the Complaint.

[3] In the Complaint, Short defines "Selfiepay" as defendant Selfiepay, Inc., but then goes on to refer to certain "Selfiepay technology," an un-defined term   *Id.* at ¶¶ 3 and 18.   He further makes reference to "Derbywire/Selfiepay," an un-defined entity. Short's failure to adequately delineate between and among these undefined terms renders the Complaint somewhat of a morass. Nonetheless, Defendants present the allegations as the face of the Complaint appears to indicate the terms are intended.

2

possessed technology consisting of a mobile wallet service provider designed to use facial recognition technology for credit card payment verification (the "Selfiepay Technology"). *Id.* at ¶ 14. Though Short alleges that he was unaware that Derbywire and Selfiepay were distinct corporate entities, he concedes that prior to ever providing money to Derbywire, he was informed that Selfiepay was "a business line under or a subsidiary entity of Derbywire." Comp. at ¶ 17.

In or around March 2015, Short decided to provide funding to Derbywire, and alleges that at the time he was "only interested in Selfiepay, as it was a unique product." Comp. at ¶ 18. In March 2015, Short entered into a convertible promissory note with Derbywire in the amount of $50,000 (the "March Derbywire Note"). *Id.* at ¶ 21. That note is due and payable on March 18, 2016. *Id.* Though Short has brought the instant suit in his individual capacity, he executed the March Derbywire Note on behalf of his company, SYTE Corporation. *Id.* at Ex. A, pg. 10 (signature block). The March Derbywire Note makes no mention of Selfiepay or the Selfiepay Technology. *Id.* at Ex. A.

Prior to providing any additional funds, Short claims he requested assurances "that his investment was providing capital for Selfiepay." Comp. at ¶ 26. Short alleges that in response he was provided an unsigned, un-dated "Addendum for Convertible Promissory Note" (the "Addendum"). *Id.* at ¶ 26 and Ex. B. The Addendum states that Short's investment is part of the Derbywire "infrastructure," and describes that infrastructure thusly:

> Derbywire Inc comprise[*sic*] of Derbywire Holdings that consist of "derbywire", a new music streaming mobile payment application, "selfiepay", a mobile payments app using facial recognition technology, "rock headphones", "tuki" our payment stand, and our digital music record label "derbywire music". All these brands represent the company and is apart[*sic*] of the makeup of the company … [t]his is intended to provide clarity that this investment covers across all brand listed.

Compl. at Ex. B.  Short alleges that "as a result of the Addendum," he agreed to increase his investment, entering into a second convertible promissory note in the amount of $70,000 (the "April Derbywire Note," together with the March Derbywire Note the "Derbywire Notes").  *Id.* at ¶ 27.  That note is due and payable on April 3, 2016.  *Id.*  Unlike the March Promissory Note, the April Promissory Note is executed by Short in his individual capacity.  Compl. at Ex. C, pg. 10 (signature block).  However, like the March Promissory Note, the April Promissory Note makes no mention of Selfiepay or the Selfiepay Technology.  *Id.* at Ex. C.[4]

Short alleges that subsequent to the April Promissory Note he was "isolated" from "Derbywire/Selfiepay" and prevented from "protecting his investment."  Compl. at ¶ 33.  He further alleges that despite being told that "Selfiepay was a subsidiary of, or a line of business under, Derbywire," he has since been told that "Derbywire and Selfiepay are and always were separate companies."  *Id.* at ¶ 35.  Though he alleges those two statements to be inconsistent, the Complaint does not contain any indication as to how or why those statements are in "direct contravention."[5]  Short alleges that Ms. Battle is now attempting to prevent Short from "realizing the value of his investment" (despite the funds not being due until March and April, 2016) and that he is "unlikely to be paid back the value of the two promissory notes," an allegation for which he provides no factual basis.  *Id.* at ¶ 42.

---

[4] Though immaterial to Defendants' instant motion, the dates provided by Short in the Complaint and those reflected on the attached exhibits are inconsistent.  For example, Short alleges that he received the Addendum on April 2, 2015, and subsequently executed the April Promissory Note on April 20, 2015.  Compl. at ¶¶ 26-27.  The un-signed Addendum Short allegedly relied upon, however, states that Short executed convertible notes on March 15, 2015 and March 29, 2015.  *Id.* at Ex. B.  Much like Short's failure to delineate between the acts of Derbywire, Selfiepay and Ms. Battle, and Short's use of the undefined "Derbywire/Selfiepay" and "Selfiepay technology," Short provides no explanation for the inconsistent dates.

[5] The Complaint contains numerous other, superfluous, allegations, such as ones related to the death of Ms. Battle's father and alleged promises to provide Short a leadership position within Derbywire.  Compl. at ¶¶ 30-32 and 39-40.  However, Short does not seek relief tied to those allegations, so they will not be addressed herein.

Prior to the Derbywire Notes coming due, Short filed the instant suit, alleging four causes of action: 1) fraud in the inducement related to the Derbywire Notes; 2) violation of the Illinois Securities Laws of 1953 (the "Illinois Securities Laws") as a result of Defendants' alleged fraudulent conduct; 3) violation of the Illinois Securities Laws as a result of Defendants' alleged failure to register the Derbywire Notes with the Illinois Secretary of State; and 4) declaratory judgment seeking a declaration that Short is invested in Selfiepay. For the reasons stated herein, the Complaint should be dismissed.

### III. Argument

**A. Pleading Standards**

A proper complaint must make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint cannot merely recite the elements of a cause of action but must contain factual allegations sufficient to raise a right to relief above the speculative level, *i.e.* the factual content must demonstrate that the stated claim for relief is plausible, not just possible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a motion to dismiss, the court must determine the sufficiency of the complaint in terms of whether it properly states a claim upon which relief may be granted, not whether the plaintiff will prevail on the merits. *See Allen Bros*, 2002 WL 237872 at *2 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Although FRCP Rule 8(a) requires only "notice pleading," a plaintiff can only satisfy the rule's requirements by pleading factual allegations that demonstrate a *plausible* theory of liability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly* at 556) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 940 (internal citation omitted).

Where a complaint states a claim for fraud, it must plead with particularity the facts constituting that fraud or mistake. Fed. R. Civ. P. 9(b). "This means the who, what, when, where, and how: the first paragraph of any newspaper story." *See DeLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). As discussed, *infra*, Short has failed to allege facts which, even if taken as true, present a plausible claim to relief. Further, his allegations of fraud are insufficient to satisfy the heightened pleading standard of Rule 9(b). For these reasons, the Complaint should be dismissed.

**B.      The Complaint Does Not Allege a Plausible Claim for Fraud**

An action for fraudulent inducement requires that a plaintiff plead: 1) a false representation of material fact; 2) made with knowledge or belief that the statement was false; 3) made with the purpose of inducing another party to act; 4) where the other party justifiably relies upon the representation in taking an act or refraining from an action; 5) to that party's detriment.[6] *See El v. Davis*, 2013 WL 1914233, at *3 (D. Del. May 7, 2013) (dismissing fraudulent inducement claim); *see also Thorpe v. Levenfield*, 2005 WL 2420373, at *3 (N.D. Ill. Sept. 29, 2005) (listing elements under Illinois law). The complaint, however, must also show a plausible claim to relief. *See Iqbal*, 556 U.S. at 678. A claim of fraud is unavailable to avoid the effect of a written agreement if the complaining party "could have discovered the fraud by reading the instrument and was afforded a full opportunity to do so." *See Security Center, Inc. v. American Tel. & Tel. Co.*, 1995 WL 307267, at *7 (N.D. Ill. May 16, 1995) (finding complaint failed to state a claim for fraudulent inducement); *see also, e.g., Carrow v. Arnold*, 2006 WL 3289582, at

---

[6] The Derbywire Notes state that the notes, as well as "all actions arising out of or in connection" with the Derbywire Notes, shall be governed by and construed in accordance with the laws of the State of Delaware. Compl. at Ex. A, pg. 7 and Ex. B, pg. 8. As discussed, *infra*, Short's claims fail under both Delaware and Illinois law.

\*11 (Del. Ch. Oct. 31, 2006) (noting that because the plaintiff had an opportunity to read the contract and discover the defendants' supposed misrepresentations, any reliance he placed on the defendant's prior, inconsistent, oral promises was unreasonable), *aff'd*, 933 A.2d 1249 (Del. 2007). What's more, a party cannot maintain a claim for fraudulent inducement where, as here, he is a sophisticated businessman alleging that he relied upon an oral statement directly contradicted by the plain terms of a contract. *See, MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at \*15 (Del. Ch. 2010) (dismissing fraud claim where reliance was unreasonable); *see also, Paper Ex., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 759 (7th Cir. 1992) (finding reliance unreasonable where party had opportunity to read agreement prior to executing).

Short's complaint fails for several reasons. First, Short alleges that he was fraudulently induced to enter into the Derbywire Notes by Ms. Battle's representation that Selfiepay and the Selfiepay Technology were a part of Derbywire. Compl. at ¶ 44. However, even if that were true, nowhere in the Complaint does Short allege that he was ever told, or ever relied on the belief that, Selfiepay and the Selfiepay Technology would *remain* with Derbywire.[7] To the contrary, he concedes that prior to investing any money into Derbywire, he was told that Derbywire had several lines of business, including among them the Selfiepay Technology. Compl. at ¶ 17 and Ex. B. In fact, the Complaint makes abundantly clear that Ms. Battle told him, prior to executing the Derbywire Notes, that Selfiepay was separate from Derbywire. *See id.* at ¶ 17 ("[Ms. Battle] represented that Selfiepay was a subsidiary of, or a line of business under, Derbywire."). That Short appears to believe that this statement is inconsistent with Selfiepay and

---

[7] Even if Short had alleged such a promise, which he does not, it would not have been actionable as fraud. *See, e.g., MicroStrategy*, 2010 WL 5550455, at \*15 (stating that prior oral promises or statements of future intent are generally insufficient to sustain a claim for fraudulent inducement); *see also LeDonne v. Axa Equitable Life Ins. Co.*, 411 F.Supp.2d 957, 962 (N.D. Ill. 2006) ("a misrepresentation as to a future promise or intent will not sustain an action for fraud") (internal citation omitted).

Derbywire being separate is nothing more than a complete misunderstanding of how corporations are treated by the law. *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000) ("a parent and a subsidiary are two separate entities"); *see also Pauley Petroleum, Inc. v. Continental Oil Co.*, Del. Ch., 231 A.2d 450, 454 (1967), *aff'd*, Del.Supr., 239 A.2d 629 (1968).

Despite being told that Selfiepay and Derbywire were separate, Short executed the Derbywire Notes. Importantly, he executed those notes solely with Derbywire, and his allegation that he believed to be entering into an agreement with Selfiepay is patently unreasonable. *See Security Center*, 1995 WL 307267 at *8 (finding reliance unjustifiable where "[h]ad [plaintiff] read nothing more than the first page, plaintiffs would have discovered the contradiction between [the] alleged representation and the agreement's express statement …"). Had he wanted to ensure that he was investing in either Selfiepay or the Selfiepay Technology, he could have done so, either by executing agreements with Selfiepay or by requiring that the Selfiepay Technology remain with Derbywire. He did neither. Put another way, Short fails to allege that there was *any* legal duty or obligation on Derbywire or Ms. Battle to retain Selfiepay or the Selfiepay Technology in Derbywire. To the contrary, Short concedes that Derbywire had multiple lines of business and technologies – none of which he alleges Derbywire was under any obligation to retain. Accordingly, his claim fails. *See, e.g., Shailja Gandhi Revocable Trust v. Sitara Capital Mgmt, LLC*, 2011 WL 814647, at n5 (N.D. Ill. Feb. 25, 2011) (dismissing fraud claim where complaint failed to properly allege reliance.)

Tellingly, the Derbywire Notes *do* contain a provision allowing Short to exercise his conversion option upon a "Change of Control," defined as "a sale of all or substantially all of the assets of the Company." Compl. at Ex. A, pg. 5 and Ex. B, pg. 5. Clearly, Short knew how to

protect his rights should Derbywire sell its assets – that he failed to negotiate any protections related specifically to Selfiepay or the Selfiepay Technology does not equate to fraud on the part of Defendants. As a "respected and successful Chicago businessman," Short certainly knew how to protect his interests, and must be held to the agreements he signed. *See, e.g., Paper Ex.*, 972 F.2d at 759; *see also GreatAmerica Leasing Corp. v. Cozzi Iron & Metal, Inc.*, 76 F.Supp.2d 875, 879 (N.D. Ill. 1999) (dismissing claim for fraudulent inducement where alleged misrepresentations were directly contradicted by face of contract and finding that where party fails to read the agreement, "it has no one to blame but itself.").

Finally, Short has failed to adequately allege that he was damaged by any fraudulent conduct of Defendants.[8] Short admits that the Derbywire Notes are not yet due, and does not allege that Derbywire has provided any indication that they do not plan to pay the notes at maturity. *See* Compl. at ¶¶ 21 and 27. To the contrary, Short alleges that he is simply "unlikely to be paid back the value of the two promissory notes," though he provides no factual basis for that allegation. *Id*. at ¶ 42. Thus, Short's alleged damages are speculative, at best, as he very well could be paid back on the Derbywire Notes at maturity. Accordingly, his claim is not proper. *See, e.g., Van Der Horst v. Van Der Horst*, 2007 WL 1099478, at *3 (N.D. Ill. April 10, 2007) (dismissing claim for declaratory judgment based on allegation that defendant would not follow terms of loan agreement).

C. **Short's Illinois Securities Law Claims Fail**

Short alleges two causes of action pursuant to the Illinois Securities Laws – one for the same fraudulent scheme previously addressed (which fails for the same reasons discussed, *supra*)

---

[8] Consistent with the theme of an internally inconsistent and tangled Complaint, Short alleges that he is owed $120,000 for his investment in Derbywire. Compl. at ¶ 51. However, he alleges that he invested $50,000 as of March 19, 2015 and $62,000 as of May 26, 2015. *Id.* at ¶¶ 24 and 29. That totals $112,000, not $120,000. Short does not provide a basis for claiming the additional, un-disbursed, $8,000.

9

and another for Defendants' alleged failure to register the Derbywire Notes. Compl. at ¶¶ 52-75. For the reasons set forth below, both claims must be dismissed.

The Illinois Securities Laws provide that a sale of securities made in violation of Section 5/12 – which includes the provisions Short alleges to have been violated – "shall be voidable at the election of the purchaser." Ill. Sec. Law 1983, 815 ILCS 5/13A. To bring such a claim, however, an aggrieved purchaser must comply with explicit notice requirements – including serving a demand for repayment upon the seller and providing an opportunity for the seller to re-purchase the securities. *Id.* at 5/13B. If such a notice is given and the aggrieved purchaser refuses an offer to re-purchase the securities, "[n]o purchaser shall have any right or remedy under [Section 5/13]." *Id.* The Illinois Securities Laws do not allow for an aggrieved purchaser to skip this notice requirement. *Id.*

Short fails to allege that he has complied with the provisions of the Illinois Securities Laws requiring that he provide notice and an opportunity for re-purchase to Defendants. Accordingly, the Complaint fails to state a claim under the Illinois Securities Laws. *See Eldean v. Mitchell,* 2009 WL 674340, *3 (N.D. Ill. March 13, 2009) (determining that the complaint failed because the complaint did not allege that the plaintiff provided the required notice to defendant). Short's allegation that the Complaint itself suffices for notice likewise fails. *See Shailja Gandhi*, 2011 WL 814647, at *4 (notice provided by complaint is insufficient, and in order to be entitled for leave to re-plead plaintiff must be able to allege, consistent with its FRCP Rule 11 obligations, that notice pursuant to Section 13 was given within 6 month time limit). Accordingly, its claims pursuant to the Illinois Securities Laws must be dismissed.

Finally, Short's allegation that he is entitled to relief based upon Defendants' alleged failure to register the Derbywire Notes cannot stand. Short alleges that Defendants have failed to

comply with Section 5/2a of the Illinois Securities Laws and that, therefore, he is entitled to relief. Compl. at ¶¶ 64-75. Short ignores, however, the clear and unequivocal language in the Illinois Securities Laws that:

> [N]either the civil remedies provided in subsection A of this Section 13 nor the remedies of rescission and appointment of a receiver, conservator, ancillary receiver or ancillary conservator … nor the remedies of restitution, damages or disgorgement of profits … shall be available against any person by reason of the failure to file with the Secretary of State, or on account of the contents of, any notice filing under Section 2a of this Act …

Ill. Sec. Law 1983, 815 ILCS 5/13H. Accordingly, Short's claim must be dismissed.

### E. Short's Claim for Declaratory Judgment Fails

In his final cause of action, Short has asked that this Court take a bizarre and unwarranted action – declare that Short's agreements are with Selfiepay, not Derbywire. Compl. at ¶ 77. In order for the Court to have jurisdiction to issue such a declaratory judgment, however, there must exist an "actual controversy."[9] *See Atlanta Intern. Ins. Co. v. Atchison, Topeka and Santa Fe Ry. Co.*, 1990 WL 36244, *1 (N.D. Ill. March 6, 1990). One basic requirement of an "actual controversy" is that "the facts averred present 'a substantial controversy between [the] parties ... of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* Short's Complaint is void of sufficient allegations to meet that bar, and thus the Court does not have subject-matter jurisdiction over this claim. *See* Fed. R. Civ. P. 12(b)(1).

Here, no such "actual controversy" exists. Short concedes that the Derbywire Notes were executed solely by Derbywire, and the attached evidence supports that allegation. Compl. at ¶¶ 21 and 27, Exs. A and B. Short further concedes that he was told, prior to investing in Derbywire, that Selfiepay was only a *part* of Derbywire. *See id.* at ¶ 17 ("[Ms. Battle]

---

[9] Though Short fails to state the authority upon which he bases his claim for declaratory judgment, Defendants assume Short intends to invoke the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

11

represented that Selfiepay was a subsidiary of, or a line of business under, Derbywire."); *see also id.* at Ex. B. Further, the clear terms of the Derbywire Notes show that they were an agreement with Derbywire, not Selfiepay, and to declare otherwise would ignore well settled principles of contract law. *See MicroStrategy*, 2010 WL 5550455, at *8 (dismissing breach of contract claim where contract terms were clear and unambiguous); *see also, e.g., GreatAmerica*, 76 F.Supp.2d at 878 ("Illinois uses a 'four corners' rule in the interpretation of contracts, holding that 'if the language of a contract appears to admit of only one interpretation, the case is indeed over'") (internal citation omitted). Now, Short wants this Court to erase the entirety of the parties' negotiations and eviscerate their contracts by simply declaring that Short actually invested in a wholly separate entity. To do so would require the Court to, at a minimum:

- ignore that the Derbywire Notes were explicitly between Short (or his company) and Derbywire;
- ignore well-settled law regarding corporate separation;
- ignore the fact that Short neither negotiated nor bargained for an explicit direct investment in Selfiepay or the Selfiepay Technology;
- create terms of a contract never negotiated between the parties – namely terms which restrict and control the ownership and transfer of the Selfiepay Technology; and
- declare Short an investor in a company (Selfiepay) that has other investors whose rights will be affected by such a declaration, but who have not been brought before this Court to allow them an opportunity to protect their rights.

Each of the foregoing is simply improper for the Court to do, particularly under the guise of a declaratory judgment. *See Sencon Systems, Inc. v. W.R. Bonsal Co.*, 1988 WL 33842 at *9 (N.D. Ill. April 6, 1988) (for declaratory judgment to be proper, "[t]he controversy must be definite and

concrete, touching the legal relations of parties having adverse legal interests.... [i]t must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts") (internal citation omitted); *see also, e .g., Meyer Mfg. Co., Ltd. v. Cuisine-Ware, Inc.*, 1987 WL 5394 at *1 (N.D. Ill. Jan. 14, 1987) ("[T]he court, in its discretion, can decline to entertain an action for declaratory relief because of the non-joinder of an interested party, regardless of whether the absent party is indispensable …"). Accordingly, Short's claim for declaratory relief should be dismissed.

## IV. Conclusion

For the foregoing reasons, and any other reasons which the Court may see fit to consider, Defendants respectfully request that plaintiff Mario Short's Complaint Against Derbywire, Inc., Selfiepay, Inc., and Sharon[*sic*] Battle be dismissed.

Dated:   February 29, 2016                                     Respectfully submitted,

                                                               **DEFENDANTS DERBYWIRE, INC.,
                                                               SELFIEPAY, INC. and SHARRON BATTLE**

                                                               By: /s/ Ryan M. McLaughlin
                                                                        One of its Attorneys

Ryan M. McLaughlin
**BARNES & THORNBURG LLP**
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
(312) 357-1313 Tel
(312) 759-5646 Fax

Victor Vital (*pro hac vice* forthcoming)
Thomas G. Haskins, Jr. (*pro hac vice* forthcoming)
**BARNES & THORNBURG LLP**
2100 McKinney Ave, Suite 1250
Dallas, TX 75201
(214) 258-4200 Tel
(214) 258-4199 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2016 a copy of the foregoing **Motion to Dismiss Plaintiff's Complaint** was filed electronically. Notice of this filing will be sent to the attorneys of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    /s/ Ryan M. McLaughlin
Ryan M. McLaughlin

DMS 3776169v1